UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| LONNIE D. WILLIAMS, )<br>)<br>    Plaintiff )<br>)<br>  vs. )<br>)<br>PRISON HEALTH SYSTEMS, *et al.*, )<br>)<br>    Defendants ) | CAUSE NO. 3:05-CV-154 RM |

<u>OPINION AND ORDER</u>

Lonnie D. Williams, a *pro se* prisoner, submitted a complaint alleging that he was denied medical care. Cecil Davis, the superintendent, is represented by the Indiana Attorney General. The other defendants (Medical Defendants) are separately represented by private counsel. Supt. Davis filed a motion for summary judgment alleging that he was not deliberately indifferent and that Mr. Williams did not exhaust his administrative remedies. The Medical Defendants filed a motion for summary judgment addressing only the question of exhaustion of administrative remedies. The motions have been fully briefed and are now ripe. The standard for reviewing a summary judgment motion is the same regardless of whether a party is represented by counsel. <u>Outlaw v. Newkirk</u>, 259 F.3d 833, 836-837 (7th Cir. 2001).

> [T]he plain language of [FED. R. CIV. P.] 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts

> immaterial. The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

Celotex v. Catrett, 477 U.S. 317, 322-23 (1986).

I.

Supt. Davis contends that Mr. Williams cannot prove that he was deliberately indifferent to his serious medical needs. Deliberate indifference is an element of an Eighth Amendment claim for the denial of medical treatment. Gutierrez v. Peters, 111 F.3d 1364, 1369 (7th Cir. 1997). Deliberate indifference is a very high standard. Liability under § 1983 attaches only where a defendant acts with "something approaching a total unconcern for [the plaintiff's] welfare in the face of serious risks, or a conscious, culpable refusal to prevent harm." Duane v. Lane, 959 F.2d 673, 677 (7th Cir. 1992).

> Negligence on the part of an official does not violate the Constitution, and it is not enough that he or she should have known of a risk. Instead, deliberate indifference requires evidence that an official actually knew of a substantial risk of serious harm and consciously disregarded it nonetheless.

Pierson v. Hartley, 391 F.3d 898, 902 (7th Cir. 2004) (citations omitted). Liability does not attach even if a defendant is incompetent, Walker v. Peters, 233 F.3d 494 (7th Cir. 2000), or unreasonable, Gibbs v. Franklin, 49 F.3d 1206, 1208 (7th Cir. 1995). This total disregard for a prisoner's safety is the "functional equivalent of wanting harm to come to the prisoner." McGill v. Duckworth, 944 F.2d 344, 347 (7th Cir. 1991).

Supt. Davis, in his declaration, states:

2

      3. I do not have medical training and am not qualified to evaluate the medical decisions of medical personnel or to overrule those decisions.

      4. Medical staff of the DOC includes licensed physicians and licensed nurses who are responsible for developing and implementing plans and methods for delivery of medical care.

      5. I may not recall every instance in which offender Lonnie Williams, DOC 10095, contacted me concerning his medical condition, but I am aware that he has complained in the past that he was not being properly treated for a hernia.

      6. As ISP superintendent, my duties were such that I could not personally investigate every instance in which an offender complained to me about the medical care he was receiving.

      7. In those instances where I did not personally investigate such communications, I delegated the matter to a subordinate to investigate and to take appropriate action.

      8. I am not aware of any occasion when a subordinate conducted such an investigation and did not take appropriate action.

      9. In a few instances, I did personally investigate the inmate's allegations.

      10. On no occasion did I become aware of facts that led me to believe that the offender was not receiving proper medical care.

      11. I have looked into Mr. Williams' complaint concerning treatment of his hernia and have been informed that Mr. Williams is not a good candidate for surgical intervention because of his obesity and other factors.

      12. I have been informed that Mr. Williams must lose weight before he becomes a good candidate for surgery, that he has been informed of that fact, and that he nonetheless does not lose weight.

      13. I have been informed that Mr. Williams' hernia can be managed by other means.

      14. As a consequence of the information supplied to me, I am not, and have never been, of the opinion that Mr. Williams' hernia is being treated improperly.

      15. It is my understanding and belief that all of the decisions concerning Mr. Williams' medical condition have been made by qualified medical personnel.

Davis declaration, docket # 65-2.

In response, Mr. Williams submitted several declarations and exhibits demonstrating that he notified Supt. Davis about his medical needs and the problems he

was having in obtaining umbilical hernia surgery. For instance, in his own statement, which qualifies as a declaration under penalty for perjury pursuant to 28 U.S.C. § 1746, two paragraphs address the superintendent.

> 5. Plaintiff has informed all defendants that Plaintiff has been denied access to hernia specialists and corrective surgery for financial reasons, and further that if Plaintiff were not a prisoner, any reasonable doctor would have surgically corrected the umbilical hernia when it first appeared.
> . . .
> 9. Plaintiff has informed all Defendants that Plaintiff has suffered continuous pain from an umbilical hernia which required corrective surgery, and that Plaintiff's medical condition was not only serious but also inherently dangerous and life-threatening.

Williams declaration, docket # 72-4. Another example is a letter he says he wrote to Supt. Davis in which he stated, "ISP medical personnel have agreed that this medical condition requires surgery, but have repeatedly stated that Prison Health Services would never approve a request for umbilical hernia surgery." Exhibit G, docket # 72-3. Though this evidence establishes notice of his medical condition and his inability to obtain surgery, notice is not disputed. Supt. Davis, in his declaration, admitted to knowing about Mr. Williams' medical problems.

Absent from Mr. Williams' submissions is evidence that the superintendent was deliberately indifferent.

> If a prisoner is under the care of medical experts a non-medical prison official will generally be justified in believing that the prisoner is in capable hands. This follows naturally from the division of labor within a prison. Inmate health and safety is promoted by dividing responsibility for various aspects of inmate life among guards, administrators, physicians, and so on. Holding a non-medical prison official liable in a case where a prisoner was under a physician's care would strain this division of labor.

Greeno v. Daley, 414 F.3d 645, 656 (7th Cir. 2005) (ellipsis omitted) *citing* Spruill v. Gillis, 372 F.3d 218, 236 (3rd Cir. 2004). Supt. Davis knew that Mr. Williams had a serious medical condition. He investigated, or had others investigate, the concerns that Mr. Williams raised. He was satisfied that Mr. Williams was receiving proper medical care. Under such circumstances, it is immaterial whether a prison official was provided with false information during his investigation, or was incompetent not to have recognized deception, or was unreasonable not to have investigated further. Though Mr. Williams argues to the contrary, he has not presented any evidence that Supt. Davis consciously disregarded a substantial risk to his safety such as to be the functional equivalent of wanting harm to come to him.

Because Mr. Williams has not presented any evidence that Supt. Davis was deliberately indifferent, the superintendent's motion for summary judgment will be granted.

II.

The Medical Defendants contend that Mr. Williams did not exhaust his administrative remedies. "No action shall be brought with respect to prison conditions . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Mr. Williams responds that he exhausted all available remedies in two grievances: #2003-9-109 and #2004-8-99.

5

Grievance #2003-9-109 does not reasonably address the denial of medical treatment issues raised in this complaint and therefore it is of no merit here whether it was filed or exhausted. In it Mr. Williams stated:

> I have repeatedly attempted to get medical care for a problem with my belly button. Since 12-6-01. Recently I was sent a pass for medical screening see hcf #45134, and was sent a pass on Saturday 9/6/03 at 9:00 a.m. but due to a visit had to leave after waiting an hour and not being seen, I therefore re-submitted a request (again) please see HCR # 977673, where as on 9-11-03 I received it back with the notation that I did not show up on a pass scheduled for 9-10-03. I DID NOT receive a pass on that day. I asked Sgt. Hough to check the pass log and it showed I had in fact been sent a pass for that day, but as stated I never received the pass. I then went to the dorm counselor, Mr. Taylo who in turned called the hospital and spoke to nurse "Linda" who suggested I re-submit my request again. This is not right . . . . I was never given a pass. I checked around my cubicle area and no pass was even left there. I have been watching for a pass all week, and had not received it.

Exhibit D, docket # 77-5 (emphasis and ellipsis in original). The grievance form asks for a "Suggested Remedy" and Mr. Williams typed,

> That I be given the medical treatment I need and that hospital passes be given direct to the offender and not merely laid in his cube where it could be blown away or picked up by anyone . . .

Exhibit D, docket # 77-5 (ellipsis in original). The focus of this grievance is the system for distributing passes. The incidental discussion of his medical condition provides no details and is included only to supply context for the problem with the way passes are distributed. Unlike the claims he has brought in this lawsuit, prison officials reading this grievance would not be reasonably put on notice that Mr. Williams believed he was being denied needed medical care for a potentially life threatening medical condition.

On the other hand, grievance #2004-8-99 clearly and unequivocally addresses the denial of medical treatment claims raised in this lawsuit.

> For over three years now I have been walking around with an umbilical hernia and have been seen by Dr. Alli, Dr. Mitcheff and N.P. Maddex, all of whom have said it needs repaired. But the D.O.C. will not have it repaired. I suffer daily from pain in my stomach which radiates around to my side. It gets so bad that sometimes I can't even stand up, and when I defecate it hurts even more so. The pain has increased to a point that I am unable to lift anything and there are times I can't stand straight up. Still nothing has been done about it.
> Each time I sign up for sick call the doctor's avoid the issue. They all seem to agree I need it repaired but nothing else is done.

Exhibit A, docket # 72-3 at 1. The "Suggested Remedy" was "Get me the medical care required and have the hernia repaired."Exhibit A, docket # 72-3 at 1.

Mr. Williams admits that he did not pursue this grievance through all five steps of the grievance system, but he declares that he was prevented from doing so and therefore did exhaust all of the grievance system that was available to him.

> 2. Plaintiff filed a second Grievance #2004-8-99 and completed Step Two, but prison officials failed to respond to Step Two, failed to provide the forms for Step Three in spite of numerous requests for those forms, and failed to respond to Plaintiff's letters as to why prison officials failed to timely and properly respond to the second grievance.
> 3. Plaintiff has used all available means to notify State officials and prison officials that his serious medical problem has been ignored, and that the umbilical hernia which has caused continuous pain and suffering is a life-threatening condition in a prison environment that needs to be surgically corrected.

Williams declaration at 1, docket # 72-4. This declaration is sufficient to defeat the motion for summary judgment and the Medical Defendants' motion will be denied.

In their reply, the Medical Defendants present the declaration of Sgt. Karen Sabinske. She states,

> 8. I am familiar with Offender Williams. Plaintiff Offender Williams was not denied a Step 3, Step 4 and/or Step 5 grievance form applicable to the Indiana Department of Correction Grievance Procedure, Indiana Department of Correction Policy # 00-02-301.

Exhibit E, docket # 77-6 at 2. These conflicting statements create a genuine issue of material fact as to whether an administrative remedy existed for Mr. Williams beyond step two. Mr. Williams says it did not, Sgt. Sabinske says that it did. This factual dispute, like any other, must be resolved by the fact finder – in this case, the jury.

For the foregoing reasons, the court:

(1) GRANTS Cecil Davis' motion for summary judgment (docket # 64); and

(2) DENIES the Medical Defendants' motion for summary judgment (docket # 68).

SO ORDERED.

ENTERED: May  9 , 2007

　　　　　　　　　　　　　　　　　　  /s/ Robert L. Miller, Jr.  
　　　　　　　　　　　　　　　　　　Chief Judge  
　　　　　　　　　　　　　　　　　　United State District Court