UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| LONNIE D. WILLIAMS, | ) |
| Plaintiff | ) |
| vs. | ) CAUSE NO. 3:05-CV-154 RM |
| PRISON HEALTH SYSTEMS, *et al.*, | ) |
| Defendants | ) |

OPINION AND ORDER

Lonnie D. Williams, a *pro se* prisoner, submitted a complaint alleging that he was denied medical care for his hernia. He seeks monetary compensation and injunctive relief based on two theories. First, he argues that the defendants were deliberately indifferent in not providing him with surgical treatment. Second, he argues that they were deliberately indifferent in not providing him with medical treatment for his pain, obesity, hypertension, and diabetes. The second theory is separate from, but an extension of, the first because the defendants assert that he was not a good candidate for surgery until after he was able to control or regulate these other medical problems.

The remaining defendants filed a motion for summary judgment. The motion has been fully briefed and it is now ripe. The standard for reviewing a summary judgment motion is the same regardless of whether a party is represented by counsel. Outlaw v. Newkirk, 259 F.3d 833, 836-837 (7th Cir. 2001).

> [T]he plain language of [FED. R. CIV. P.] 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an

>element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

Celotex v. Catrett, 477 U.S. 317, 322-23 (1986).

The defendants contend that Mr. Williams can't prove that they were deliberately indifferent to his serious medical needs. Deliberate indifference is an element of an Eighth Amendment claim for the denial of medical treatment. Gutierrez v. Peters, 111 F.3d 1364, 1369 (7th Cir. 1997). Liability under § 1983 attaches only where a defendant acts with "something approaching a total unconcern for [the plaintiff's] welfare in the face of serious risks, or a conscious, culpable refusal to prevent harm." Duane v. Lane, 959 F.2d 673, 677 (7th Cir. 1992).

>Negligence on the part of an official does not violate the Constitution, and it is not enough that he or she should have known of a risk. Instead, deliberate indifference requires evidence that an official actually knew of a substantial risk of serious harm and consciously disregarded it nonetheless.

Pierson v. Hartley, 391 F.3d 898, 902 (7th Cir. 2004) (citations omitted). Liability does not attach even if a defendant is incompetent, Walker v. Peters, 233 F.3d 494 (7th Cir. 2000), or unreasonable, Gibbs v. Franklin, 49 F.3d 1206, 1208 (7th Cir. 1995). This total disregard for a prisoner's safety is the "functional equivalent of wanting harm to come to the prisoner." McGill v. Duckworth, 944 F.2d 344, 347 (7th Cir. 1991).

The plaintiff presents eight reasons why the defendants were deliberately indifferent. "In this instant case, all Defendants have been deliberately indifferent to Plaintiff's serious medical condition for the following reasons: . . .." Williams' Memorandum in Opposition to Summary Judgment at 10, docket # 113-2. The court addresses these eight arguments separately as they relate to each of the five remaining defendants based on Mr. Williams' two theories of the case where applicable.

I.

> [A]ll Defendants knew or should have known that Prison Health Services lacked the legal authority to practice medicine in the State of Indiana as Prison Health Services was a for-profit corporation controlled by business executives rather than licensed physicians, with the result that business profit motives were the driving force behind all medical decisions for prisoner medical care.

Williams' Memorandum in Opposition to Summary Judgment at 11, docket # 113-2. This argument is premised on two erroneous beliefs: first, that the lack of a licence is evidence of medical indifference; and second, that being motivated by profit is evidence of medical indifference. Neither is true.

Accepting as true that each of the defendants knew that Prison Health Services was not properly licensed in the State of Indiana, neither a lack of legitimate licences nor knowledge of that fact is itself evidence of deliberate indifference. Neither unlicenced persons nor corporations are legally presumed to be indifferent to others.

3

So, too, Mr. Williams's argument that the defendants were motivated by profit is not evidence of medical indifference. In a market economy, all for-profit corporations presumably are motivated by profit and the prevailing economic theory in this country holds that individuals are motivated by personal gain. Though it is unclear that Mr. Williams has admissible evidence that these defendants are so motivated, for the purpose of this motion the court accepts as true that they are. Nevertheless, being motivated by personal gain creates no genuine issue of fact as to whether the defendants were deliberately indifferent to Mr. Williams' medical needs in these instances.

II.

> [A]ll Defendants have been informed on numerous occasions that Prison Health Services and PHS employee doctors and nurses have denied Plaintiff access to qualified hernia specialists for the surgical correction of Plaintiff's umbilical hernia for financial reasons based upon a corporate directive that hernia surgery is not available to prisoners.

Williams' Memorandum in Opposition to Summary Judgment at 11, docket # 113-2. Mr. Williams declares that, "I have informed all Defendants that I have been denied access to hernia specialists and corrective surgery for financial reasons . . ." and the court accepts as true that he has done so. Affidavit of Lonnie Williams at ¶ 5, docket # 113-3. Mr. Williams also declares that Dr. Alli, Nurse Practitioner Maddox, and Dr. Mitcheff told him that PHS policy doesn't permit hernia surgery. Affidavit of Lonnie Williams at ¶¶ 20, 25, 33, and 34, docket # 113-3. For the purpose of this summary judgment, the court accepts the existence of such a policy to also be true. So too, it is undisputed that Mr. Williams has a hernia and

4

that it is a serious medical condition. *See generally* Defendants' Statement of Material Facts, docket # 91. Further, it is undisputed that, "The definitive treatment for an umbilical hernia is surgical repair." Declaration of Dr. Mitcheff at ¶ 8, docket # 92-14.

The record contains no admissible evidence that hernia surgery, rather than a non-surgical therapy, was or is required. It is undisputed that surgery is a treatment option for a hernia, but "[u]nder the Eighth Amendment, [a prisoner] is not entitled to demand specific care. She is not entitled to the best care possible." Forbes v. Edgar, 112 F.3d 262, 267 (7th Cir.1997). Without evidence that surgery was or is required, none of the defendants can be found liable to him.

Mr. Williams clearly wants surgery, but wanting it is neither evidence nor proof. He says that Dr. Eggars told him that he needed immediate surgery, but Dr. Eggars is not party to this case and he hasn't produced an affidavit from him. Affidavit of Lonnie Williams at ¶ 4, docket # 113-3. Mr. Williams declares that hernia specialists have told him that he requires surgery, but he doesn't name them and he hasn't submitted any affidavits from them. *See* Affidavit of Lonnie Williams at ¶ 7, 8, 12, and 36, docket # 113-3. Mr. Williams' wife declares that she spoke to Dr. James Goodyear who, "stated that it was imperative that Lonnie have the hernia repaired as soon as possible . . .." Affidavit of Josephine Williams at ¶ 13, docket # 113-3. But the court did not receive an affidavit from Dr. Goodyear. Affidavits from doctors rendering an expert medical opinion might have created a genuine issue of material fact. But there are no physician affidavits. Mr. Williams and his wife recount their conversations with doctors, but these are inadmissible hearsay.

5

*See* FED. R. EVID. 802. Mr. Williams and his wife say that they have researched hernia treatment and that he needs surgery, but neither Mr. Williams nor his wife are medical experts and so cannot personally render an expert opinion as to his need for surgery. *See* FED. R. EVID. 701 and 702.

This leaves undisputed the defendants' declarations expressing their expert medical opinions that he should not have surgery.

> The determination to move to surgical repair in a particular patient depends upon the individual's clinical circumstances after a weighing of the relative risks of surgery against the benefits.

Declaration of Dr. Mitcheff at ¶ 9, docket # 92-14.

> I have on multiple occasions consistently explained to Mr. Williams that we would see him regularly and at prescribed times for healthcare in the Chronic Care Clinic where we would assess the hernia situation. I prescribed an abdominal binder to provide support for his abdominal wall and his hernia. I have made it quit [sic] clear that his serious health concerns made elective surgical repair of his hernia very risky. It was my professional medical opinion that the health risks outweighed the benefits of the requested surgery and that surgery could present a life threatening situation with his specific health complications. I explained my opinion that surgery could not be considered until Mr. Williams was "tuned up" as good as we can get. That meant getting his weight down, and his blood pressure and diabetes under control. However, his weight remained uncontrolled. Mr. Williams was advised to diet, but his weight went up instead of down. In view of the clinical fact that the hernia remained easily reducible, surgical repair was not medically necessary. I continued to monitor the situation.

Declaration of Dr. Mitcheff at ¶ 19, docket # 92-14.

"I explained to him on multiple occasions that as long as the hernia remained stable and reducible, surgical correction would have been an elective procedure." Declaration of Dr. Alli-Balogum at 7, docket # 92-16. Though Mr. Williams disputes that he saw Dr. Alli-

Balogum on multiple occasions, what is relevant here is the doctors' medical opinions. Both physicians agree that Mr. Williams should not have surgery.

Mr. Williams has no admissible evidence to dispute these statements. Without expert medical testimony in support of his demand for surgery, there is no basis for any finding that he requires surgery. Summary judgment will be granted as to that claim as to all defendants. This leaves only his claim that the defendants were deliberately indifferent in not providing him with medical treatment for his pain, obesity, hypertension, and diabetes.

### III.

> [A]ll Defendants knew or should have known (a) that medical personnel at the prison hospital are not licensed to distribute medications; (b) that Michael Mitcheff lost his license to practice medicine for his drug addiction and his misconduct in the procuring of those drugs before coming to Indiana State Prison; (c) that the prison doctors in this case were not qualified as specialists to evaluate or treat Plaintiff's heart condition, diabetes, or umbilical hernia.

Williams' Memorandum in Opposition to Summary Judgment at 11, docket # 113-2. As before, these claims are based on the faulty inferences that a given status (unlicenced, drug use, lack of specialist training) is evidence of medical indifference. They are not, so it is unnecessary to determine whether admissible evidence supports these claims. Accepting as true that each defendant knew of these allegations and even accepting the allegations themselves as true, none of these assertions demonstrate deliberate indifference. The lack of a licence, the loss of a licence, prior drug use, current drug use, and the lack of a

7

particular medical specialty are not in themselves evidence of deliberate indifference. "[D]eliberate indifference requires evidence that an official actually knew of a substantial risk of serious harm and consciously disregarded it nonetheless." Pierson v. Hartley, 391 F.3d 898, 902 (7th Cir. 2004) (citations omitted). None of the statuses or activities described here prove either knowledge of medical harm to Mr. Williams or a conscious disregard of it. At most, they imply merely ignorance or incapacity. None provide a basis for finding a genuine issue of disputed fact as to deliberate indifference.

IV.

> [A]ll Defendants have been informed that Plaintiff suffered continuous pain from an umbilical hernia which required proper medical attention from qualified medical specialists in that Plaintiff's medical condition was not only serious but also inherently dangerous and life-threatening.

Williams' Memorandum in Opposition to Summary Judgment at 11, docket # 113-2. To the extent this response relates to his claim for denial of surgery, those issues were previously addressed and this rephrasing raises nothing new. To the extent that this response relates to his claim for denial of medicine and treatment by hernia specialists, those claims are addressed later in this opinion.

V.

> [A]ll Defendants knew or should have known that their primary responsibility as medical providers was to their patient and not to their employer, and that when the employer of said medical providers

8

> demonstrated a complete disregard for the health and welfare of Plaintiff, the employees had a duty to act.

Williams' Memorandum in Opposition to Summary Judgment at 11, docket # 113-2. Accepting as true that each defendant knew of the duty and also accepting as true that the employer prohibited hernia surgery, as previously explained, Mr. Williams has no admissible evidence demonstrating that he required hernia surgery. Therefore this is not a basis for finding that the defendants were deliberately indifferent to his serious medical needs.

### VI.

> [A]ll Defendants have been informed that the continued delay in providing surgical correction increases the danger and threat to Plaintiff's health and welfare.

Williams' Memorandum in Opposition to Summary Judgment at 11-12, docket # 113-2. For the purpose of this motion, the court accepts as true that the defendants were so informed and also accepts as true that delaying needed surgery creates increased risks. But as previously explained, Mr. Williams has presented no admissible evidence that he required hernia surgery rather than non-surgical treatment. Further, he has provided no expert medical evidence demonstrating that the risks of proceeding were less than the risks of waiting. That is to say, even accepting that there are risks to waiting for surgery, Mr. Williams has brought forth no admissible evidence to indicate that such risks were not less

than those posed by having the surgery. The mere presence of risk, then, is not a basis for a finding of deliberate indifference.

### VII.

> [A]ll Defendants have been deliberately indifferent when Plaintiff was denied timely medications, timely access to medical specialists, and an adequate diet.

Williams' Memorandum in Opposition to Summary Judgment at 12, docket # 113-2. As previously discussed, an inmate "is not entitled to demand specific care. [H]e is not entitled to the best care possible." Forbes v. Edgar, 112 F.3d 262, 267 (7th Cir.1997). Therefore, the denial of access to medications, medical specialists, and an adequate diet is only actionable where there denial is in deliberate indifference to a serious medical need.

Mr. Williams hasn't presented any expert medical evidence that he required a hernia specialist. He says Dr. Eggars and Dr. Myers told him he needed immediate surgery, but neither Dr. Eggars nor Dr. Myers are parties to this case, and he hasn't produced an affidavit from either of them. *See* Affidavit of Lonnie Williams at ¶ 51, docket # 113-3. Therefore he may not proceed on the claim that he was denied access to a hernia specialist.

In contrast, Mr. Williams substantial evidence that he was in pain. "[T]he umbilical hernia which has caused continuous pain and suffering . . .." Affidavit of Lonnie Williams at ¶ 3, docket # 113-3. "I have witnessed my husband bent over in pain in the visiting room." Affidavit of Josephine Williams at ¶ 3, docket # 113-3. "I have also seen Lonnie Williams doubled over in pain from his hernia condition." Affidavit of Harroll Kriner at

¶ 10, docket # 113-3. *See also* Affidavit of Terry Twitty at ¶¶ 4-7, docket # 113-3; Affidavit of Arlin Johnson at ¶¶ 3-4, docket # 113-4; and Affidavit of Mark Inman at ¶ 3, docket # 113-4.

It is undisputed that Mr. Williams was prescribed various medications and a special diet. "To help Mr. Williams try to improve and stabilize his physical condition in anticipation of surgery, Mr. Williams was prescribed low calorie diabetic diet to help with his weight, medications for his blood pressure, and regular monitoring of pertinent blood values." Defendants' Statement of Material Facts, docket # 91 at ¶ 17, *see also* ¶¶ 45 and 62.

In addition, Mr. Williams has presented evidence that he did not receive treatment for his pain nor the prescribed medications and diet as needed. "I don't care about the risks of surgery, I want the pain to stop. If I die, at least I will be out of pain." Affidavit of Lonnie Williams at ¶ 30, docket # 113-3 (quotation marks omitted). "On numerous occasions I have been out of prescribed medications." Affidavit of Lonnie Williams at ¶ 13, docket # 113-3. "Dr. Mitcheff removed me from the diet line . . .." Affidavit of Lonnie Williams at ¶ 14, docket # 113-3. He may proceed on his claim for a denial of medical treatment based on not receiving treatment for his pain and for not receiving his prescribed medications and diet. It remains to determine against which defendants Mr. Williams may proceed on these claims.

### A.

Mr. Williams declares that Dr. Sherif Alli-Balogum saw him only once.

11

>Dr. Alli never prescribed pain medications to treat the hernia pain, but rather prescribed a laxative, Dulcolax, for a painful, obstructed umbilical hernia. I talked to Alli on only one occasion and never again had any direct contact with Alli.

Affidavit of Lonnie Williams at ¶ 19, docket # 113-3. Though Mr. Williams wanted a pain killer, pain can be alleviated in ways other than with a pain medication. Mr. Williams hasn't presented the court with any expert medical testimony that the prescription of a laxative was so far outside of reasonable medical practice as to be evidence of deliberate indifference. Dr. Alli-Balogum saw him, diagnosed his condition, and prescribed a laxative for his pain. Based on this evidence, no reasonable juror could conclude that the doctor was deliberately indifferent to his pain. Dr. Alli-Balogum is entitled to summary judgment.

B.

By contrast, Mr. Williams has created a genuine issue of disputed fact as to whether Dr. Michael Mitcheff was deliberately indifferent to his pain, to the denial of his prescribed medications, and to his special diet. As previously cited, Mr. Williams declares that he suffered continuously from pain that was, at least at times, so severe that he preferred death to having to endure it. Additionally, "Mitcheff deliberately denied my access to the diet line because I had missed too many meals, while at the same time using the excuse that I needed to lose weight." Affidavit of Lonnie Williams at ¶ 35, docket # 113-3. "I informed Mitcheff that I was completely out of my prescribed medications on numerous occasions." Affidavit of Lonnie Williams at ¶ 38, docket # 113-3. "I informed Mitcheff on a regular basis that I was doing everything possible to lose weight, but that the lack of proper food

on the diet line, and the lack of continuous access to the diet line was not conducive to losing weight." Affidavit of Lonnie Williams at ¶ 42, docket # 113-3. Dr. Mitcheff argues that his actions and decisions were justified and that he was not deliberately indifferent, but there is sufficient evidence here to create a genuine issue of disputed fact as to whether he was deliberately indifferent to Mr. Williams pain, the denial of his prescribed medications, and his special diet.

C.

Mr. Williams has created a genuine issue of disputed fact as to whether Medical Director Karla Foster was deliberately indifferent to the denial of his prescribed medications, but not his pain or his special diet. Though Mr. Williams says he told her about his pain and the denial of his special diet, she knew that he was under a doctor's care and he told her that Dr. Mitcheff cancelled his special diet.

> If a prisoner is under the care of medical experts a non-medical prison official will generally be justified in believing that the prisoner is in capable hands. This follows naturally from the division of labor within a prison. Inmate health and safety is promoted by dividing responsibility for various aspects of inmate life among guards, administrators, physicians, and so on. Holding a non-medical prison official liable in a case where a prisoner was under a physician's care would strain this division of labor.

Greeno v. Daley, 414 F.3d 645, 656 (7th Cir. 2005) (ellipsis omitted) *citing* Spruill v. Gillis, 372 F.3d 218, 236 (3rd Cir. 2004). Director Foster is not a physician. Though she is the medical director, she is merely an administrator. It appears that Mr. Williams is here requesting the kind of interference with a doctor's judgment that he criticizes in other contexts. Mr. Williams may not proceed against Director Foster on his claim that she

13

denied him medical treatment by being deliberately indifferent to his pain and his special diet.

By contrast, he may proceed on his claim related to the denial of his prescribed medication. "I also informed Foster that I was continuously out of my prescribed medications." Affidavit of Lonnie Williams at ¶ 27, docket # 113-3. "Foster was informed that I was out of prescribed medications for weeks at a time during 2003, 2004, 2005, and 2006. Foster did nothing to correct this medication problem." Affidavit of Lonnie Williams at ¶ 29, docket # 113-3. In her declaration, Director Foster does not explain how she responded to Mr. Williams' being denied prescribed medication. She states that she "can not override a physician's decision(s) or order(s) regarding the prisoners' health care and treatment plan." Declaration of Foster at ¶ 6, docket # 92-15. But Director Foster would not have needed to override a decision or order to follow-up on why Mr. Williams wasn't receiving his prescribed medication. Indeed, such follow-up would be part of implementing the doctor's orders.

D.

Mr. Williams also has created a genuine issue of fact as to whether Nurse Practitioner Christine Maddox was deliberately indifferent to his pain and the denial of his prescribed medications, but he makes no reference to her in regard to his special diet. "I informed Maddox about the continuous pain and suffering . . .." Affidavit of Lonnie Williams at ¶ 24, docket # 113-3. "I overheard Mitcheff advise Maddox that: 'If we delay

14

the renewal of medications for 10 days, I can save over $50,000 a year.'" Affidavit of Lonnie Williams at ¶ 46, docket # 113-3.

The analysis related to Mr. Williams' claim that he was denied prescribed medication is substantially similar for Nurse Maddox as it was for Director Foster. The claim regarding pain is different. Nurse Maddox is not an administrator; she is a health care professional. She may not overrule a doctor's orders, but her responsibility extends beyond merely needing to know that he is under a doctor's care. Nurse Maddox makes no mention of how she responded to his complaints of pain. This creates a genuine issue as to whether she was deliberately indifferent to those pleas.

E.

Prison Health Services is a corporation and Mr. Williams presents no evidence that it or its policies prevented him from obtaining pain relief, medication, or his special diet. He may not proceed on those claims against it. Because this leaves no claims against Prison Health Services, it will be dismissed.

VIII.

> In particular, Mitcheff was deliberately indifferent in sadistically inflicting pain during "medical examinations", and then, in retaliation, having Williams transferred to the Wabash Hospital during which Williams was hogtied hand to foot during the 5-hour transportation trip.

Williams' Memorandum in Opposition to Summary Judgment at 12, docket # 113-2. This lawsuit is not about either an excessive use of force or retaliation. Such claims are well

15

beyond the scope of the pleadings. This case is, and has always been, solely about a claim for a denial of medical treatment.

IX.

Having resolved the summary judgment motion, the court turns to the pending motions and the trial schedule. The defendants filed a motion to strike various parts of the plaintiff's filings in response to the motion for summary judgment. Having resolved the summary judgment motion, the court denies the motion to strike as moot.

This case is scheduled for trial on October 22, 2007, with a final pretrial conference on October 4, 2007. In light of the changes resulting from the granting of partial summary judgment, these dates must be vacated and reset. The proposed final pretrial order no longer properly addresses the scope of the upcoming trial. Furthermore, the pending motion in limine and proposed jury instructions were not drafted in light of the current trial posture. The pending motion in limine and the proposed jury instructions will therefore be denied with leave to re-file. Because a new proposed final pre-trial order will have to be prepared, the motion to amend the witness and exhibit list (docket # 102) will be denied as moot.

Finally, Mr. Williams has renewed his request to bring an inmate paralegal to the final pre-trial conference. This motion adds nothing new to what he presented in his first motion. As previously stated, Mr. Williams is proceeding *pro se* and he may not bring an inmate paralegal to assist him.

16

X.

For the foregoing reasons, the court:

(1) DENIES the defendants' motion for summary judgment (docket # 90) as to the plaintiff's Eighth Amendment claims for a denial of medical treatment against (A) Dr. Michael Mitcheff for being deliberately indifferent to Lonnie D. Williams' pain, denial of prescribed medications, and his special diet; (B) Medical Director Karla Foster for being deliberately indifferent to the denial of Lonnie D. Williams' prescibed medications; and (C) Nurse Practitioner Christine Maddox for being deliberately indifferent to Lonnie D. Williams' pain and the denial of his prescribed medications;

(2) GRANTS the defendants' motion for summary judgment (docket # 90) as to all other claims;

(3) DISMISSES the defendants Dr. Sherif Alli-Balogum and Prison Health Services;

(4) DENIES AS MOOT the motion to strike (docket # 115);

(5) VACATES the final pretrial conference set for October 4, 2007 and the trial set for October 22, 2007;

(6) DENIES the motion in limine (docket # 103) and the proposed jury instructions (docket # 111) with leave to re-file;

(7) DENIES AS MOOT the motion to amend the witness and exhibit list (docket # 102);

(8) DENIES the plaintiff's renewed motion to allow paralegal participation (docket # 112); and

(9) ENTERS the following SCHEDULING ORDER:

A **3 day trial by jury** is set for 9:30 a.m. South Bend time, on **January 22, 2008**. The plaintiff shall be present for the trial with all of his legal paperwork, but inmate witnesses shall testify by videoconferencing if such technology is available.

The **final pretrial conference** is set for 1:30 o'clock p.m. South Bend time on **January 3, 2008**.

Defense Counsel shall prepare and submit the **proposed final pretrial order** signed by all counsel of record and all unrepresented parties on or before **December 3, 2007**. The plaintiff and defendants shall **file and exchange** their contentions, witness and exhibit lists on or before **November 1, 2007**. If the plaintiff does not file and serve his lists within the time allowed, the court may dismiss the case. The lists must include the names and addresses of any and all witnesses the plaintiff intends to call to testify at the time of trial (regardless of whether subpoenas or orders to produce have been requested for such witnesses), a statement of all the plaintiff's contentions, and a description of any and all exhibits which he may seek to introduce into evidence at the time of trial.

Any motions in limine shall be filed by **December 10, 2007**, together with appropriate memoranda citing points and authorities. The parties may raise as many issues in a motion in limine as the case makes appropriate, but

may only file one motion. Oral motions in limine will be allowed only for good cause shown. Motions should identify the evidence at issue with specificity.

By **December 10, 2007**, the parties must file any proposed jury instructions (identifying the source and/or supporting authority for each proposed instruction).  Any written objections to jury instructions shall be filed by **January 4, 2007**. The court has its own standard instructions on burden of proof, credibility of witnesses and deliberations.

SO ORDERED.

ENTERED: October  2 , 2007

	/s/ Robert L. Miller, Jr.
	Chief Judge
	United State District Court